## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO PUPPY, INC., a California corporation; DAVID SALINAS and VERONICA SALINAS, husband and wife, <br><br> Plaintiffs, <br><br> v. <br><br> THE CITY OF SAN DIEGO, a California municipality; SAN DIEGO ANIMAL DEFENSE TEAM, business entity of unknown form; ANIMAL PROTECTION AND RESCUE LEAGUE, a California 501(c)(3) corporation; COMPANION ANIMAL PROTECTION SOCIETY, Delaware non-profit corporation; BRYAN PEASE, a California resident; SAN DIEGO HUMANE SOCIETY, a California corporation; BLACK CORPORATIONS 1-100, inclusive; and DOES 1-300, inclusive, <br><br> Defendants/Respondents. | Case No.  13-cv-2783-BTM-DHB <br><br> **ORDER RE: DEFENDANTS' MOTIONS TO DISMISS & ANTI-SLAPP MOTIONS** |

//

# I. <u>BACKGROUND</u>

Plaintiffs began selling pure-bred puppies in San Diego in 2011. Declaration of David Salinas ("Salinas Decl.") at 2. They own and operate two pet stores—one in a small strip mall in San Diego ("San Diego Puppy"), and one in a small strip mall in Oceanside ("Oceanside Puppy"). (Compl. ¶¶209, 211.) On August 5, 2013, the City of San Diego passed the Companion Animal Protection Ordinance No. O-20280 (Municipal Code § 42.0706 ("the Ordinance"), which bans the sale or display of any dog, cat, or rabbit not obtained from a City-approved source (e.g., a California non-profit rescue or shelter). The Ordinance went into effect on September 4, 2013. On October 1, 2013, Mr. Salinas was informed by the City Attorney's office that the City was preparing to enforce the ordinance by bringing an unfair competition action against Plaintiffs. Declaration of Kira Schlesinger ("Schlesinger Decl."), Ex. 1. Plaintiffs thereafter moved their inventory of puppies from their San Diego store to their Oceanside store.

Plaintiffs filed a sixty-eight page verified complaint on November 25, 2013, invoking the Court's federal question and supplemental jurisdiction. (Doc. 1.) The Complaint (1) seeks a declaratory judgment that the Ordinance is unconstitutional, (2) alleges that the "Activist Defendants" and the City improperly colluded in passing the ordinance in violation of 42 U.S.C. §§ 1983, 1985, and (3) asserts tort claims (nuisance & trespass) as well as a hate crimes claim under Cal. Civ. Code § 52 (the Ralph Act). In brief, Plaintiffs allege that protesters have been harassing them, and that the activist defendants conspired to pass the Ordinance in an attempt to shut down San Diego Puppy and create a monopolistic environment for animal shelters and animal rescue organizations. (See, e.g., Compl. ¶¶31, 33, 34, 60, 78, 80, 92, 233, 239, 241.) This scheme was allegedly inspired by a "playbook" put out by the Humane Society of the United States entitled *A Guide to Using Local Ordinances to Combat Puppy Mills.* (Id. ¶31.) Plaintiffs sought an injunction enjoining protesters from holding a demonstration outside their Oceanside store and

from "annoying, harassing, trespassing, threatening or otherwise violating the peaceful operation of the business . . . ." (Doc. 7 at 3.) The Court denied Plaintiffs' request for temporary injunctive relief on December 13, 2013. (Doc. 13.)

The Animal Protection and Rescue League ("APRL") filed an Anti-SLAPP Motion to Strike on January 14, 2014. (Docs. 3, 23.) Defendant Bryan Pease filed a motion to dismiss for failure to state a claim as well as an Anti-SLAPP motion. (Docs. 17, 21.) Defendant Companion Animal Protection Society ("CAPS") filed its combined motion to dismiss/anti-SLAPP motion on April 17, 2014. (Doc. 39.) Plaintiffs have not filed an opposition to any of these motions.

The San Diego Humane Society also filed a motion to dismiss for failure to state a claim, which the Court denied as moot after Plaintiffs voluntarily dismissed the Humane Society from the suit. (Docs. 16, 27, 36.) A notice of voluntary dismissal as to the City of San Diego was filed on February 5, 2014. (Doc. 33.) Since then, a settlement conference failed to resolve the pending motions, and Plaintiffs' counsel filed a motion to withdraw from the case. (Doc. 45.)

## II. ANTI-SLAPP MOTIONS

### A. Legal Standard

"A Strategic Lawsuit Against Public Participation ("SLAPP") is a meritless suit that seeks to use 'costly, time-consuming litigation" to chill a person's constitutionally protected right to free speech.'" Gilabert v. Logue, No. 13-cv-578, 2013 U.S. Dist. LEXIS 179128 (C.D. Cal. Dec. 20, 2013) (quoting Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 839 (9th Cir. 2001)). California enacted its Anti-SLAPP law in response to the "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Code Civ. P. § 425.16(a). The statute is available to litigants in federal court. Thomas v. Fry's Elecs., Inc., 400 F.3d 1206, 1206 (9th Cir. 2005). § 425.16 provides, in pertinent part:

>(b)(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.
>
>(2) In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.
>
>. . . .
>
>(e) As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

California courts apply a two part test to determine whether an action is subject to an Anti-SLAPP motion to strike. <u>Navellier v. Sletten</u>, 29 Cal.4th 82, 85, 88 (2002). First, the defendant must establish that "the challenged cause of action is one arising from protected activity." <u>Id.</u> at 88. Activity is protected if it falls within the categories outlined in § 425.16(e). <u>Id.</u> Speech is "in connection with an issue of public interest" if it concerns: (i) a person in the public eye, (ii) "conduct that could directly affect a large number of people beyond the direct participants," or (iii) "a topic of widespread, public interest." <u>Rivero v. Am. Fed'n of State, Cnty., and Mun. Employees, AFL-CIO</u>, 105 Cal. App. 4th 913, 924 (2003).

Once a defendant makes a threshold showing that the act in question is protected, the burden shifts to the plaintiff. To resist the special motion to strike, the plaintiff must establish "a probability of prevailing on the claim." Navellier, 29 Cal. 4th at 88. The plaintiff meets this requirement if he has "stated and substantiated a legally sufficient claim." Id. at 88-89 (internal quotation marks and citation omitted); see also Wilson v. Parker, Covert & Chidester, 28 Cal.4th 811, 821 (2002) ("Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'") (quoting Matson v. Dvorak, 40 Cal.App.4th 539, 548 (1995)).

**B. Discussion**

**1. The Animal Protection and Rescue League's Anti-SLAPP Motion**

To prevail on an anti-SLAPP motion, a defendant must first make a showing that the challenged claim arises from speech that is within the ambit of the anti-SLAPP statute. Batzel v. Smith, 333 F.3d 1018, 1024 (9th Cir. 2003). Plaintiffs assert seven claims against APRL. Count IV complains of APRL's "participation in drafting and furthering the Ordinance." (Compl. ¶152.) The Court finds that these allegations concern APRL's participation in the democratic process such that they fall squarely within the ambit of Cal. Civ. Proc. Code § 425.16(e)(2). United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n, 389 U.S. 217, 222 (1967) ("[T]he rights to assemble peaceably and to petition for a redress of grievances are among the most precious of the liberties safeguarded by the Bill of Rights. These rights, moreover, are intimately connected both in origin and in purpose, with the other First Amendment rights of free speech and free press."); Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 365 (2010).

Count VI alleges, *inter alia*, that APRL's agents conspired with members of the City Council and "obtained their approval to draft and promote the Ordinance" in violation of 42 U.S.C. § 1985. (Compl. ¶¶169-182.) The anti-SLAPP statute

applies only to state law claims, however.  Hence, Count VI is not subject to APRL's special motion to strike.  See Nunag-Tanedo v. East Baton Rouge Parish Sch. Bd., 711 F.3d 1136, 1141 (9th Cir. 2013); Hilton v. Hallmark Cards, 599 F.3d 894, 901 (9th Cir. 2010).

Count X alleges, inter alia, that APRL engaged in unfair business practices by misinforming the public and City Council members about Plaintiffs' business. The Court finds these claims to fall within the ambit of Cal. Civ. Proc. Code § 425.16(e)(2) or § 425.16(e)(4).  Counts VIII, IX, XI and XII allege that APRL members engaged in unlawful activities in the course of "gathering in front of the places of business controlled by Plaintiffs." (Compl. ¶¶ 221, 223, 225, 233, 244, 246.)  These tort claims each involve alleged protest activity that falls within the ambit of Cal. Civ. Proc. Code § 425.16(e)(3) or § 425.16(e)(4).  The Court rejects Plaintiffs' conclusory assertion that the individual defendants' conduct "does not come within any First Amendment right, as it occurs in a non-public forum." (Compl. ¶217.)  Speech activities, e.g., protests, generally enjoy Constitutional protections even on certain privately owned property such as a strip mall and its parking lot.  See Lloyd Corp. v. Tanner, 407 U.S. 551 (1972); Robins v. Pruneyard Shopping Center, 23 Cal. 3d 899, 902 (1979) (solicitation of signatures on a petition to the government at a privately owned shopping center was an activity protected by the California Constitution); Slauson Partnership v. Ochoa, 112 Cal. App. 4th 1005, 1022 (Cal. App. 2d Dist. 2003); Best Friends Animal Soc. v. Macerich Westside Pavilion Property, 193 Cal. App. 4th 168, 181 (2011) ("it is a general proposition that a shopping mall must allow protests within aural and visual range of a targeted business whenever the mall is open to the public"); Mitchell v. City of New Haven, 854 F. F.Supp. 2d 237, 246-47 (D. Conn. 2012).

APRL has met its burden of providing a prima facie showing that the allegations against APRL concern protected speech.  The burden thus shifts to

1   Plaintiffs to establish a reasonable probability that they will prevail on each claim.
2   Makaeff v. Trump Univ., LLC, 715 F.3d 254, 261 (9th Cir. 2013).  "In opposing an
3   anti-SLAPP motion, the plaintiff cannot rely on the allegations of the complaint,
4   but must produce evidence that would be admissible at trial." HMS Capital, Inc. v.
5   Lawyers Title Co., 118 Cal. App. 4th 204, 212 (2004).  Under this standard, "much
6   like [the standard] used in determining a motion for nonsuit or directed verdict," the
7   anti-SLAPP motion prevails where "no reasonable jury could find for the plaintiff."
8   Metabolife Int'l, Inc., 264 F.3d at 840 (internal citations and quotation marks
9   omitted).  Plaintiffs fall far short of meeting their burden, as they have offered no
10  argument in opposition to the anti-SLAPP motions.  Silva v. U.S. Bancorp, 2011
11  U.S. Dist. LEXIS 152817, 2011 WL 7096576, *3 (C.D. Cal. 2011) (ruling that
12  plaintiff's failure to respond in his opposition brief to defendants' argument in
13  motion to dismiss amounted to a concession that his claim should be dismissed);
14  Tatum v. Schwartz, 2007 U.S. Dist. LEXIS 10225, 2007 WL 419463, *3 (E.D. Cal.
15  2007) (finding that the plaintiff "tacitly concede[d] [a] claim by failing to address
16  defendants' argument in her opposition."); Ardente, Inc. v. Shanley, 2010 U.S. Dist.
17  LEXIS 11674 (N.D. Cal. Feb. 9, 2010) ("Plaintiff fails to respond to this argument
18  and therefore concedes it through silence.").  See also LcvR 7.1.f.3.c.
19      Additionally, Plaintiffs fail to provide any indicia that APRL is responsible
20  for the conduct alleged in Counts VIII, IX, and XI, e.g., trespassing, harassing
21  employees, and blocking a store entrance.  (Compl. ¶¶204, 215.)  Indeed, APRL
22  claims it never participated in a protest outside Plaintiffs' stores.  (Pease Decl. ¶ 9.)
23      In Count IV, Plaintiffs allege that APRL, the San Diego Humane Society,
24  Bryan Pease, and the San Diego Animal Defense Team conspired to eliminate the
25  supply of puppies to California in general, and to San Diego Puppy in particular, in
26  violation of the Cartwright Act, Cal Bus. & Prof. Code §16720.  (Compl. ¶147.)
27  Defendants, including APRL, argue that their activities were legitimate efforts to
28  influence government action, not an unlawful plot to hijack the City Council, such

that they are outside the scope of the Cartwright Act under the *Noerr-Pennington* doctrine. Under that doctrine, antitrust liability cannot attach to a genuine, good-faith act of petitioning the government. Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 136 (1961); United Mine Workers v. Pennington, 381 U.S. 657, 671 (1965). Indeed, such efforts generally offend the Cartwright Act only when they are a sham. Blank v. Kirwan, 39 Cal. 3d 311, 321 (Cal. 1985); Ludwig v. Superior Court, 37 Cal. App. 4th 8, 22 (Cal. App. 4th Dist. 1995). Here, Plaintiffs fail to provide sufficient factual allegations to support the conclusion that APRL's actions were based on improper self-interest, particularly in light of APRL's statement that it has no financial stake in dog adoptions. (Pease Decl. ¶ 10.) Moreover, this claim would fail regardless as the Cartwright Act is inapplicable to valid government action. Blank, 39 Cal. at 325; Oregon Natural Res. Council v. Mohla, 944 F.2d 531, 533 (9th Cir. 1991).

In Count X, Plaintiffs accuse the "Activist Defendants," including APRL making "disparaging comments" and "conspiring with pre-disposed council members in misrepresenting and exaggerating the facts" in violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, *et. seq.* (Compl. ¶¶221-225). Where fraud is the basis for an unfair competition claim, the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply. Kearns v. Ford Motor Co., 567 F.3d 1120, 1124-25 (9th Cir. 2009); Rodriguez v. JP Morgan Chase & Co., 809 F. Supp. 2d 1291, 1297 (S.D. Cal. 2011); Rose v. Seamless Financial Corp., 916 F. Supp. 2d 1160, 1166 (S.D. Cal. 2013). The UCL prohibits any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code §17200. An "unlawful" business act under § 17200 is any business practice that is prohibited by law, whether "civil or criminal, statutory or judicially made..., federal, state or local." McKell v. Washington Mut., Inc., 142 Cal. App. 4th 1457, 1474, 49 Cal. Rptr. 3d 227 (2006) (citations omitted). A business act is

1  "unfair" under § 17200 "if it violates established public policy or if it is immoral,
2  unethical, oppressive or unscrupulous and causes injury to consumers which
3  outweighs its benefits." See id. at 1473.  Finally, a "fraudulent" business practice
4  under § 17200 is "one which is likely to deceive the public," and "may be based on
5  representations to the public which are untrue, and also those which may be
6  accurate on some level, but will nonetheless tend to mislead or deceive." See id. at
7  1471.  Here, Plaintiffs claims are too conclusory to satisfy their burden, as they fail
8  to describe any "business practice" or specify any harmful misrepresentations.  This
9  is especially so in light of APRL's evidence that it enjoys no economic benefit from
10 puppy adoptions.  (Pease Decl. ¶10.)

11     Count XII alleges a violation of Cal. Civ. Code § 52 *et. seq.*, complaining
12 that, by targeting and acting against Plaintiffs, the defendants "incited and
13 encouraged radical and threatening conduct, including death threats and other racial
14 slurs."  (Compl. ¶¶244, 246, 247.)   The non-advocacy activity alleged, including an
15 altercation where an unknown person hit an unidentified person with a protest sign
16 on an unspecified date, is not traced to or connected with APRL.  The Court finds
17 this claim to be too speculative and conclusory to satisfy Plaintiffs' burden as to
18 their claim for relief under the Ralph Act.

19     The Court accordingly finds that Plaintiffs fail to carry their burden as to
20 each state law claim.  APRL is therefore the prevailing party under the anti-SLAPP
21 statute, such that it may recover related attorney's fees and costs pursuant to Cal.
22 Code Civ. Proc. § 425.16(c).

23     **2. Bryan Pease's Anti-SLAPP Motion**

24     Plaintiffs also assert seven claims against APRL director Bryan Pease.
25 (Compl. ¶100.)  Count IV alleges that Mr. Pease participated in a conspiracy to
26 disrupt the supply of puppies to San Diego Puppy by lobbying to outlaw their
27 current supply chain in violation of the Cartwright Act, Cal. Bus. & Prof. Code §§
28 16720.  (Comp. ¶¶147-150.)  Because this claim directly involves Mr. Pease's

1  "participation in drafting and furthering the Ordinance" (Id. ¶152), it concerns
2  participation in the legislative process such that it falls within the ambit of Cal. Civ.
3  Proc. Code § 425.16(e)(2).  See generally Meyer v. Grant, 486 U.S. 414, 421-22
4  (1988) ("the circulation of a petition involves the type of interactive communication
5  concerning political change that is appropriately described as 'core political
6  speech'").

7  Counts VIII, IX, XI and XII allege that Mr. Pease engaged in unlawful
8  activities in the course of "gathering in front of the places of business controlled by
9  Plaintiffs."  (Compl. ¶¶ 196, 197, 221, 223, 225, 233, 244, 246.)  These tort claims
10 each involve alleged protest activity that falls within the ambit of Cal. Civ. Proc.
11 Code § 425.16(e)(3) or § 425.16(e)(4).  Count X alleges, *inter alia*, that Mr. Pease
12 engaged in unfair business practices by misinforming the public and City Council
13 members about Plaintiffs' business.  The Court finds this claim to fall within the
14 ambit of Cal. Civ. Proc. Code § 425.16(e)(2) or § 425.16(e)(4).

15 Mr. Pease has met his burden of providing a prima facie showing that the
16 allegations against him concern protected speech, and the burden shifts to Plaintiffs
17 to establish a reasonable probability that they will prevail on each claim.  Makaeff,
18 715 F.3d at 261; Lawyers Title Co., 118 Cal. App. 4th at 212.  Under this standard,
19 "much like [the standard] used in determining a motion for nonsuit or directed
20 verdict," the anti-SLAPP motion prevails where "no reasonable jury could find for
21 the plaintiff."  Metabolife Int'l, Inc., 264 F.3d at 840.  Plaintiffs again fall short of
22 their burden, as they have offered no argument in opposition to the anti-SLAPP
23 motions.  Even assuming that Mr. Salinas would testify as to the allegations of the
24 verified complaint, the Court finds that Plaintiffs' evidence falls short of the mark.
25 To begin, Count IV fails against Mr. Pease under the *Noerr-Pennington* doctrine for
26 the same reasons described with respect to APRL, *supra*.  Plaintiffs also fail to
27 satisfy their burden as to Count X for the same reasons specified with respect to
28 APRL.  In other words, the allegations of unfair business practices are too vague

1 and conclusory, especially in light of Mr. Pease's statement that he serves APRL as
2 a volunteer and has received no compensation for any lobbying relevant here.
3 (Pease Decl. ¶¶2, 3.)  See Rose, 916 F. Supp. 2d at 1166.  Nor is there any basis for
4 finding Mr. Pease's alleged conduct to constitute an unlawful or unfair business
5 activity under the UCL.
6     The Court similarly finds that Plaintiffs' conclusory allegations of trespass
7 and nuisance are insufficient, as they fail to even allege an unlawful trespass onto
8 Plaintiffs' property, and Mr. Pease has stated that he has never been to any of
9 Plaintiffs' stores nor participated in any protest outside of their stores.  (Pease Decl.
10 ¶9.)  Count XII, alleging a violation of the Ralph Act, also fails since Plaintiffs
11 allege no threatening conduct by Mr. Pease, who has stated he made no threats.
12 (Pease Decl. ¶10.)
13     The Court accordingly finds that Plaintiffs fail to carry their burden as to the
14 claims against Mr. Pease contained in Counts IV, VIII, IX, X, XI and XII.  Mr.
15 Pease is therefore a prevailing party under the anti-SLAPP statute and may recover
16 related attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 425.16(c).
17     **3. The Companion Animal Protection Society's Anti-SLAPP Motion**
18     The Complaint asserts five claims against CAPS.  CAPS moves to dismiss
19 Counts IX, X, XI, and XII pursuant to Cal. Code Civ. P. § 425.16.  (CAPS's motion
20 to dismiss Count VI is addressed in the penultimate section of this Order, *infra*.)
21 As with APRL, Counts IX, X, XI and XII allege that CAPS members engaged in
22 unlawful activities in the course of "gathering in front of the places of business
23 controlled by Plaintiffs."  (Compl. ¶¶ 217, 218, 221, 223, 225, 233, 244, 246.)
24 Plaintiffs also allege that CAPS was part of a "concerted scheme" to outlaw puppy
25 mills and San Diego Puppy.  (Compl. ¶¶31, 34.)  The Court finds that the gravamen
26 of each of these claims involves alleged advocacy or protest activity that falls
27 within the ambit of Cal. Civ. Proc. Code § 425.16(e); Briggs v. Eden Council for
28 Hope and Opportunity, 19 Cal. 4th 1106 1110 (1999).  Count X alleges, *inter alia*,

that CAPS engaged in unfair business practices by misinforming the public and City Council members about Plaintiffs' business. The Court finds this claim to fall within the ambit of Cal. Civ. Proc. Code § 425.16(e)(2) or § 425.16(e)(4).

The Court finds that CAPS has made a prima facie demonstration that the allegations against them in Counts IX, X, XI, and XII concern protected speech. Again, the burden shifts to plaintiffs to establish a reasonable probability of success against CAPS. Once again, Plaintiffs have failed to respond to the motion and thus concede the points made therein. Even crediting the sworn allegations of David Salinas contained in the verified complaint, the Court finds that Plaintiffs have failed to carry their burden of establishing a reasonable probability that they will prevail on these claims.

Counts IX and XI allege harassment and nuisance by unknown individuals, but provide no basis for attributing those actions to CAPS. (Compl. ¶¶204, 215.) Plaintiffs' allegations of unlawful or unfair business practices are likewise too flat and conclusory to satisfy Plaintiff's burden as to Count X. See Rose, 916 F. Supp. 2d at 1166. For the same reasons stated with respect to APRL, *supra*, there is simply no basis for finding the alleged conduct concerning the non-profit organization's activities to be unlawful or unfair business practices under California's Unfair Competition Law. Count XII alleges a violation of the Ralph Act, but alleges no threatening conduct by CAPS. The Court accordingly finds that Plaintiffs fail to carry their burden as to each state law claim. APRL is hence the prevailing party under the anti-SLAPP statute, such that it may recover related attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 425.16(c).

The Court accordingly concludes that CAPS is a prevailing party under the anti-SLAPP statute, and it may recover related attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 425.16(c).

//
//

### III. MOTIONS TO DISMISS COUNT VI

A. **Legal Standard: Rule 12(b)(6)**

"Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  A motion to dismiss tests the sufficiency of a complaint or counterclaim, facilitating dismissal to the extent the pleading fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The pleading is construed in the light most favorable to the non-moving party and all material allegations in it are taken to be true.  Sanders v. Kennedy, 794 F.2d 478, 481 (9th Cir.1986).  However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal brackets and quotation marks omitted)).  Hence, the Court need not assume unstated facts, nor will it draw unwarranted inferences.  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009) ("Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."); Cousins v. Lockyer, 568 F.3d 1063, 1067 (9th Cir. 2009); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

Under Twombly, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S.Ct.

1   at 1949 (citing Twombly, 550 U.S. at 556). "The plausibility standard is not akin to
2   a probability requirement, but it asks for more than a sheer possibility that a
3   defendant has acted unlawfully. . . . When a complaint pleads facts that are merely
4   consistent with a defendant's liability, it stops short of the line between possibility
5   and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. at 556-
6   57) (quotation marks omitted). In sum, if the facts alleged raise a reasonable
7   inference of liability – stronger than a mere possibility – the claim survives; if they
8   do not, the claim should be dismissed. See Iqbal, 129 S. Ct. at 1949-50.

**B. Discussion**

10  The only remaining federal cause of action as to the named defendants is
11  Count VI, alleging that each defendant violated 42 U.S.C. § 1985 by conspiring to
12  disrupt the local puppy supply and thereby decimate Plaintiffs' business. Plaintiffs
13  contend that this amounted to a deprivation of equal protection of the laws.

14  42 U.S.C. § 1985(3) prohibits any two or more persons in any State from
15  conspiring to deprive any person of the equal protection of the laws. See Griffin v.
16  Breckenridge, 403 U.S. 88, 101-02 (1971). To state a cause of action under §
17  1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving,
18  either directly or indirectly, any person or class of persons of the equal protection of
19  the laws, or of equal privileges and immunities under the laws; and (3) an act in
20  furtherance of this conspiracy; (4) whereby a person is either injured in his person
21  or property or deprived of any right or privilege of a citizen of the United States."
22  United Bhd. of Carpenters & Joiners of Am. v. Scott, 463 U.S. 825, 828-29 (1983).
23  To satisfy the second element, a plaintiff must allege not only deprivation of a
24  protected right, but that such deprivation was "motivated by 'some racial, or
25  perhaps otherwise class-based, invidiously discriminatory animus.'" Sever v.
26  Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992) (quoting Griffin, 403 U.S.
27  at 102); Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 269 (1993) (The
28

term "class" "unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the §1985(3) defendant disfavors.").

The movants contend that Plaintiffs fail to state a § 1985 violation because they do not allege that they were deprived of a protected right or that Defendants were motivated by a qualifying class-based animus.  As noted above, Plaintiffs have failed to respond and thus concede the point.  Nonetheless, the Court herein reaches the merits of the argument by viewing the relevant allegations in the light most favorable to Plaintiffs.

Plaintiffs allege, *inter alia*, that Defendants approached City Council members Lorie Zapf and Marti Emerald and obtained their cooperation in the crafting and promotion of the Ordinance. (Compl. ¶¶168-69.)  They also vaguely claim that they were "restricted in their ability to present coherent arguments against the ban."[1]  (Id. ¶¶60-61.)  Additionally, Mr. Salinas received harassing phone calls, including one from someone who made racist slurs and claimed that Salinas was "an illegal."  (Id. ¶¶173-177.)  Based on "the animus shown by the public and by members of the City Council," including these calls and threats, Plaintiffs contend that they "are members of a class subjected to invidiously discriminatory animus." (Id. ¶178.)  They further allege that the conspiracy among Defendants and the City Council members "had as its central purpose the deprivation of Plaintiffs' protected rights in that it was aimed at forcing the closure of Plaintiff's business and depriving him of his occupational liberty and equal protection of law." (Id. ¶181.)

---

[1] It is unclear whether these allegations are meant to state a claim under 42 U.S.C. § 1985(1), which prohibits preventing an officer from discharging his or her duties.  To the extent it does, the Court rejects it because, while voting on bills is the exclusive province of elected officials, legislative advocacy is not.  Furthermore, the Complaint stops short of alleging that Defendants actually prevented Emerald and Zapf from performing their duties.

1    These allegations, even when construed liberally in Plaintiffs' favor, do not
2  constitute a colorable claim under 42 U.S.C. § 1985(3).  See Anderson v. Babbitt,
3  230 F.3d 1158, 1163 (9th Cir. 2000) ("A constitutional claim is not colorable if it
4  clearly appears to be immaterial and made solely for the purpose of obtaining
5  jurisdiction or is wholly insubstantial or frivolous.") (citation and internal quotation
6  marks omitted).  First, Plaintiffs have not shown that they are members of a
7  protected class for § 1985 purposes.  Orin v. Barclay, 272 F.3d 1207, 1217 (9th Cir.
8  2001).  See Foley v. Pont, 2013 U.S. Dist. LEXIS 34613, 2013 WL 1010320, *11
9  (D. Nev. Mar. 13, 2013) (finding that any harm caused to plaintiff on the basis of
10 his religion is not actionable under Section 1985(3)).  Second, Plaintiffs do not
11 plausibly suggest a racial motivation behind the alleged conspiracy.  Franklin v.
12 Oregon, State Welfare Div., 662 F.2d 1337, 1345 n.8 (9th Cir. 1981) (finding that
13 the district court lacked jurisdiction to consider the § 1985 claim because the
14 plaintiff failed to allege that the defendants were motivated by some racial, or
15 perhaps otherwise class-based, invidiously discriminatory animus).  While
16 Plaintiffs allege that Mr. Salinas was subject to ethnic slurs from an unknown
17 person (Compl. ¶174), they do not actually claim that an animus toward a plaintiff's
18 race or national origin was held by any defendant or motivated the alleged
19 conspiracy.  Rather, in addition to the obvious public policy motive, the Complaint
20 alleges that rescue operations "are big business" (Compl. ¶¶52, 92, 118) with an
21 economic motive of cornering the local puppy market.  (See id. ¶¶49-52, 65-66.)
22 But § 1985 "does not reach conspiracies based on economic or commercial views,
23 status, or activities."  Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996); Scott,
24 463 U.S. at 836-39 (rejecting argument that beating non-union employees
25 constitutes class-based animus under § 1985 because § 1985(3) does not "reach
26 conspiracies motivated by economic or commercial animus"); Sever, 978 F.2d at
27 1536 (9th Cir. 1992) (concluding that the plaintiff had not alleged a section 1985(3)
28 claim when the defendants were motivated to harm the plaintiff because his conduct

|   |   |
|---|---|
| 1 | damaged their economic prospects).  See also Eastern R. Presidents Conf. v. Noerr |
| 2 | Motor Freight, Inc., 365 U.S. 127, 139 (1961) ("The right of the people to inform |
| 3 | their representatives in government of their desires with respect to the passage or |
| 4 | enforcement of laws cannot properly be made to depend upon their intent in doing |
| 5 | so.  It is neither unusual nor illegal for people to seek action on laws in the hope |
| 6 | that they may bring about an advantage to themselves and a disadvantage to their |
| 7 | competitors."); Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., |
| 8 | Inc., 508 U.S. 49, 56 (1993); Manistee Town Ctr. v. City of Glendale, 227 F.3d |
| 9 | 1090, 1092 (9th Cir. 2000) (collecting cases applying immunity based on the |
| 10 | *Noerr-Pennington* doctrine).  Likewise, "§ 1985(3) provides no remedy for animus |
| 11 | on the basis of political beliefs." Perez-Sanchez v. Pub. Bldg. Auth., 531 F.3d 104, |
| 12 | 108-09 (1st Cir. 2008) (collecting cases); Kenney v. City of San Diego, 2014 U.S. |
| 13 | Dist. LEXIS 10491 (S.D. Cal. Jan. 28, 2014); Borregard v. Nat'l Transp. Safety |
| 14 | Bd., 46 F.3d 944, 947 (9th Cir. 1995) ("The 'liberty' that the Constitution protects |
| 15 | does not include choice of occupation.").  Finally, the fact that Plaintiffs are not |
| 16 | pursuing their § 1983 claim against the City of San Diego also raises serious doubts |
| 17 | about the viability of their § 1985 claim.  Caldeira v. County of Kauai, 866 F.2d |
| 18 | 1175, 1181-82 (9th Cir. 1989) ("the absence of a section 1983 deprivation of rights |
| 19 | precludes a section 1985 conspiracy claim predicated on the same  allegations"). |
| 20 | For these reasons, the Court finds that Plaintiffs fail to state a § 1985 claim. |

### IV.  CONCLUSION

For the reasons stated, the Court **GRANTS in part** (as to Counts IV, VIII, IX, X, XI, and XII) **and DENIES in part** (as to Count VI) the Animal Protection Rescue League's Anti-SLAPP Motion (Doc. 23); **GRANTS** Bryan Pease's Anti-SLAPP Motion (Docs. 21); **GRANTS** the Companion Animal Protection Society's Anti-SLAPP Motion (Doc. 39); and **GRANTS** each defendant's Motion to Dismiss as to Count VI (Docs. 17, 21, 39).  The Court accordingly **DISMISSES** Counts IV, VIII, IX, X, XI, and XII without leave to amend.  See Flores v. Emerich & Fike,

1  No. 05-cv-0291, 2006 U.S. Dist. LEXIS 63251, *30 (E.D. Cal. Aug. 23, 2006);
2  Gilabert v. Logue, No. 13-cv-578, 2013 U.S. Dist. LEXIS 179128, *11 (C.D. Cal.
3  Dec. 20, 2013); Simmons v. Allstate Ins. Co., 92 Cal. App. 4th 1068, 1073 (Cal.
4  App. 3d Dist. 2001). Count VI is **DISMISSED** without prejudice and with leave to
5  amend.
6        Counts I, II, III, V, and VII were levied solely against the City of San Diego
7  and the unnamed defendants. Plaintiffs voluntarily dismissed the claims against the
8  City. (Doc. 33.) The Court subsequently dismissed the claims against the
9  unidentified defendants. (Doc. 51.)
10       Bryan Pease, the Animal Protection and Rescue League, and the Companion
11 Animal Protection Society may each file a motion for attorney's fees and costs
12 **within thirty (30) days** of the entry of this Order. Failure to do so shall be deemed
13 a waiver of fees and costs.
14       Plaintiffs have leave to file an amended complaint—as to Count VI only—
15 within fifteen days of the entry of this Order. If no amended complaint is filed, a
16 final judgment of dismissal will be entered.
17       **IT IS SO ORDERED.**

19 DATED: September 11, 2014

_____
BARRY TED MOSKOWITZ
Chief Judge
United States District Court